IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 13 |
| GARY AND JUDITH DITTRICK, ) | |
| ) | Bankruptcy No. 15-01213 |
| Debtors. ) | |

**RULING ON SN SERVICING CORPORATION'S
MOTION FOR RELIEF FROM STAY**

This matter came before the Court on September 1, 2016 in Cedar Rapids. David Nadler appeared for Gary and Judith Dittrick ("Debtors"). Jason Bahnsen appeared for SN Servicing Corporation, on behalf of U.S. Bank Trust National Association, as Trustee of the HOP Trust 2013-1 ("Creditor"). The Court left the record open and gave the parties time to file additional exhibits. The parties filed additional exhibits. The Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## STATEMENT OF THE CASE

Creditor has a note and mortgage on Debtors' house. Creditor seeks relief from the automatic stay. Creditor alleges that Debtors are delinquent on postpetition payments and argues that this is cause for relief from the automatic stay. Debtors allege that they have made all the payments and are current on the note. The Court finds that Debtors are delinquent and grants Creditor's motion.

## BACKGROUND

Debtors filed a joint chapter 13 bankruptcy petition on August 27, 2015. Creditor filed a proof of claim. Debtors objected. The Court granted Debtors' objection and determined Creditor's claim to be $47,063.13 of secured debt and $1,408.84 of arrears as of August 31, 2015. The Court determined that Debtors' monthly payments should be $352.21.

On July 12, 2016, Creditor filed its motion for relief from stay. Creditor alleges that Debtors are behind on payments. Creditor asserts that Debtors owe $2,465.47, plus $176.10 in late fees, $656 in taxes, and $1,026 in legal fees. Debtors resist. Debtors argue that they have made all the payments and are actually ahead on the loan.

## FINDINGS OF FACT

Joni Yorks testified for Creditor. Yorks has worked as a loan servicing manager with Creditor for 20 years. She was familiar with Debtors' loan servicing history because she oversees the asset manager handling their loan. She was also familiar with Creditor's computer and account management systems. She testified that if a borrower makes a payment, Creditor records that payment in its computer system. She also testified that Creditor keeps computer records of missed payments and attempted payments when checks are returned for insufficient funds.

Yorks testified that Creditor's records showed only four payments on Debtors' account in 2016: $674.23 on January 16; $352.21 on June 21; $352.21 on June 21; and $352.21 on July 22. Creditor applied these payments to the four oldest delinquent payments: September 1, 2015, October 1, 2015, November 1, 2015, and December 1, 2015. Creditor placed $322.02 from the $674.23 January 2016 payment in a suspense account because it was not enough to satisfy a full payment. Yorks testified that, if a payment amount is more than a normal payment, but not enough for a second payment, it is placed in a suspense account until enough funds to make a full payment are received. She testified that Creditor will only post a payment if there are funds sufficient to satisfy a monthly payment. The money placed in the suspense account was not applied to the principal because Debtors were delinquent. Yorks also testified that Creditor' records show six of Debtors' checks bounced and were recorded in Creditor's records as "NSF."

Debtor Gary Dittrick testified that he was current on the loan. He claims he made a $674 payment in September, October, November, and December 2015, even though he owed Creditor only $352.21 per month starting in September 2015. These overpayments are not reflected in Creditor's records. He also claimed he had been making two payments of $352.21 per month in 2016 to get current. He believes he is actually $1,400 ahead on his payments to Creditor. Dittrick also testified that Creditor incorrectly charged him for property taxes on the house. He

3

was responsible for paying the property taxes himself and was going to pay the property taxes due in late September. He believes Creditor improperly escrowed or placed his excess payments in suspense when it should have applied the excess to the principal of the loan.

Debtor also testified that he incorrectly sent checks to Creditor—car payments that were not supposed to go to Creditor. Debtors believe that the stamp on the back of the checks at issue, which says "says "CREDIT TO THE ACCT WITHIN NAMED PAYEE" and "LACK OF ENDORSEMENT GUARANTEED," is proof that payment was made.

Debtors' bank account statement submitted at the hearing showed 26 bounced check fees from January 25, 2016 to July 5, 2016. Debtors also incurred nine insufficient funds charges from June 1, 2016 to July 5, 2016. While Debtor testified that these bounced checks and insufficient funds charges were not related to the mortgage payments, the Court finds otherwise.

At the conclusion of the hearing, the Court left the record open and requested additional evidence on the Debtors' four alleged $674 payments Debtor claims he made in September, October, November, and December 2015. Debtors submitted copies of 3 checks to Creditor for $674.23—one for October, one for November, and one for December 2015. Copies of the back side of only the October and November 2015 checks are shown. Those two checks have a stamp

on the back that says "CREDIT TO THE ACCT WITHIN NAMED PAYEE" and "LACK OF ENDORSEMENT GUARANTEED." Debtors also submitted a copy of their bank statement. This statement, however, was from a different bank account. It does not show in any way that the checks written on a different account actually cleared. Debtors also submitted shipping records showing delivery of two of those three checks, but nothing more about whether those checks cleared.

Creditor also filed supplemental evidence. Creditor notes that it received the October and November 2015 checks on September 12, 2016. The October check was returned for insufficient funds. The November check was honored and applied to Debtors' account. Creditor never received the Debtors' December 2015 check. Creditor also notes that Debtors sent checks on February 5, February 12, February 24, June 21, and June 23, 2016, but all were returned for insufficient funds.

## DISCUSSION

The parties dispute whether Debtors are behind on their mortgage payments. Creditor argues that Debtors are behind on their payments. Creditor argues that the multiple NSFs in its records combined with Debtors' admission that they bounced checks supports this claim. Creditor concludes that this is cause to lift the stay. Debtors argue that they are not behind on their payments. Debtors argue that they made many payments that are not reflected on Creditor's exhibits and that it is

inappropriate to lift the stay. Debtors also argue that the property taxes provide no grounds to lift the stay because they paid them.

A creditor is entitled to relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "Cause under § 362(d)(1) has been defined as 'any reason whereby a creditor is receiving less than [its] bargain from a debtor and is without a remedy because of the bankruptcy proceeding.'" In re Cornish, Bankr. No. 12-02250, 2013 WL 1755485, at *1 (Bankr. N.D. Iowa Apr. 24, 2013) (alteration in original) (quoting In re Martens, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005)). If the movant shows cause, the bankruptcy court must grant relief from the automatic stay. In re Martens, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005). A repeated failure to make required mortgage payments is cause to grant relief from stay. In re Borm, 508 B.R. 104, 106 (B.A.P. 8th Cir. 2014); see Martens, 331 B.R. at 398 ("A creditor is entitled to relief from the automatic stay if the debtor is not making mortgage payments.").

After reviewing the record, the Court finds that Debtors are behind on their mortgage payments. Although it is clear that Debtors wrote and sent many checks to Creditor, there is no evidence that these checks actually resulted in payment. In fact, Debtor's bank records, check images, and witness testimony show many checks were dishonored and returned. This is reflected on Creditor's account

6

statement. Debtors did not provide documentary proof to support their assertion that they made payments that are not reflected on Creditor's account statement.

Mr. Dittrick's testimony about the payments they actually made is unsupported by anything beyond his testimony. Debtors' bank statements show that they routinely bounce checks. Mr. Dittrick's own testimony confirms this. He admits Debtors bounced dozens of checks and even sent checks to the wrong creditor during this time period. Mr. Dittrick's testimony about checks actually paid during this period is not credible. The check images alone are insufficient proof that a payment was made.

Similarly, the stamp on the back of the checks is not sufficient proof that that the checks were honored. One of Debtors' checks has a stamp on the back, but also is stamped "NSF" on the front. The stamp on the back alone is thus not proof that the check was honored. The stamp shows Creditor received the check, but it does not show that Debtor's bank honored the check or made a payment. As a result, the stamp on the back of a check is insufficient here to show that Creditor actually received the funds. Debtors' admission about repeatedly bouncing checks to Creditor, which is confirmed on their bank statement, confirms that the stamp on the check does not show payment.

The Court finds that Creditor's account statement is mostly accurate. Creditor's testimony and documentation shows how it applied Debtors' payments.

Based on Creditor's account statement and testimony, Debtors are delinquent on their June through September 2016 payments. The Court is not able, however, to determine the exact amount of Debtor's arrearage. The precise accounting is not entirely clear given the supplemental record provided. The Court can determine on the existing record that Debtors appear to owe at least $1145.41 (four months of $352.21 payments minus $263.43 held in Debtors' suspense account), plus fees and costs, as of September 30, 2016. That amount can be further determined in collection action outside of bankruptcy. Suffice it to say, Creditor has shown that Debtors are delinquent on their post-petition mortgage payments. Creditor established cause to grant relief from the automatic stay under § 362(d)(1).

## CONCLUSION

**WHEREFORE**, Creditor's Motion for Relief from the Automatic Stay is GRANTED.

Dated and Entered:
November 1, 2016

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE